## Sumption, Appellant, v. Rogers.

*Mechanics' liens—Statutes—Obscure terms—Interpretation—Repealed statutes.*

1. Where the meaning of a term used in a statute is obscure and cannot be gathered from the text of the statute, and no definition thereof exists in general legal terminology, the one possible way of ascertaining the meaning of such term is to resort to the earlier and repealed statutes in pari materia, wherein it is used.

*Mechanics' liens—Act of June 4, 1901, Sec. 12, P. L. 431—Words and phrases—Meaning of "apportioned claim"—Act of March 30, 1831, Sec. 4, P. L. 242—Adjoining buildings.*

2. By the term "apportioned claim" as used in the Mechanics' Lien Act of June 4, 1901, Section 12, P. L. 431, providing that "no apportioned claim shall hereafter be allowed, but separate claims, with the amount due, determined by apportionment, may be filed ......," is meant a claim which under the Act of March 30, 1831, Section 4, P. L. 242, should be filed against several adjoining buildings, wherein the claimant apportioned the whole sum claimed between the several buildings, so that they could be severally made answerable for the apportioned charge, each in its own fixed proportion.

3. The omission from Section 12, of the Act of June 4, P. L. 1901, of a requirement that houses against which such separate apportioned claims shall be filed, shall be adjoining, does not indicate the intention of the legislature to allow separate apportioned claims to be filed against buildings not adjoining; the act attempts no definition of apportioned claims, and adopting the meaning of what for many years had been understood as "apportioned claims," it is apparent that the legislature meant to allow separate claims, with the amount determined by apportionment only against adjoining buildings.

4. Where a contractor who had completed certain work on nineteen different buildings filed a mechanic's lien against one of the buildings which did not adjoin the others, and the amount of the claim was ascertained by apportioning to the building against which the claim was filed its proportionate share of the total amount due the contractor under his contract, for work on all the buildings, the court did not err in making absolute the defendant's rule to strike the claim from the record, as the Act of June 4, 1901, Section 12, affords no warrant for the filing of separate claims, with amount determined by apportionment, except in cases where the buildings are adjoining.

Argued May 6, 1913. Appeal, No. 130, Jan. T., 1913, by plaintiff, from judgment of Superior Court, Oct. T., 1912, No. 160, affirming judgment of C. P. No. 1, Philadelphia Co., March T., 1912, No. 792, for defendants in case of James D. Sumption v. Calvin W. Rogers and David R. Carson, Owners or Reputed Owners. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from the Superior Court.

The facts appear in the opinion of the Supreme Court. See also Sumption v. Rogers, 53 Pa. Superior Ct. 109.

The Court of Common Pleas made absolute defendants' rule to strike off a mechanic's lien claim which plaintiff had filed, and this order was affirmed by the Superior Court. Plaintiff appealed to the Supreme Court.

*Error assigned* was the judgment of the Superior Court.

*John G. Johnson,* with him *Bruce A. Metzger, Ormond Rambo* and *J. Quincy Hunsicker, Sr.,* for appellant.

*Edward Hopkinson, Jr.,* and *Abraham M. Beitler,* with them *A. S. Ashbridge, Jr.,* for appellees.

OPINION BY MR. JUSTICE STEWART, October 13, 1913:

This case was properly decided; but, inasmuch as our affirmance rests on wholly different reasons than those assigned in the opinion filed in the Superior Court, an expression of view from us is made necessary. We are dealing with a mechanic's lien claim filed under the general Mechanic's Lien Act of June 4, 1901, P. L. 431. A motion to strike the claim from the record, on the ground that it was an apportioned claim upon a building not adjoining the other buildings embraced in the contract set out, and in the claim, prevailed in the lower court. On appeal to the Superior Court it was there held that notwithstanding the claim was an apportioned one, and the building sought to be subjected to lien was not adjoining the other buildings embraced, it was not for such reason invalid, since the purpose of the Act of 1901 as indicated in Section 12, was to give the lien privilege to apportioned claims whether the buildings were adjoining or not; but, that the Act of 1901 was in this regard unconstitutional, violating Section 7, of Article III, of the Constitution, which declares that no local or special law shall be passed "providing or changing methods for the collection of debts or the enforcing of judgments." The case lies within a very narrow compass, as we shall see. The mechanic's lien claim filed in the case recites, that by the terms of a verbal contract with the owner, claimant was "to plaster nineteen dwelling houses on the south side of Fiftieth Street between Walnut and Locust Streets; one apartment house on the North-east corner of Fiftieth and Chancellor Streets, and an apartment house on the North-west corner of Fiftieth and Locust Streets for the total price or sum of Eleven Thousand seven hundred Dollars ($11,700)," etc., and that the work contracted for had been performed. It is nowhere affirmed in the claim that any of these houses are adjoining. Presumably the nineteen dwelling houses on Walnut street and the ten on Fiftieth street were adjoining; but, however this may be,

there is no contention here that the particular building against which this claim was filed—the apartment house on the corner of Fiftieth and Locust streets—adjoined any of the other buildings embraced in the contract. Admittedly this building was separated from all of the others by a public street. The claim filed was confined to this particular apartment house and curtilage for an apportioned sum, to-wit: $1,136. The one question is as to the sufficiency of the claim. The contention on part of appellant is that under the general Mechanic's Lien Law of 1901, which has superseded all prior enactments on the subject of mechanic's liens, it is no longer required, to sustain an apportioned lien, that the building which it is proposed to subject to lien shall be adjoining. This view is sustained in the opinion filed in the Superior Court on, as we think, insufficient ground.

In Section 12, of the Mechanic's Lien Act of 1901 we have this imperative direction:

"No apportioned claim shall hereafter be allowed, but separate claims, with the amount due, determined by apportionment, may be filed as herein set forth."

What is here meant by "apportioned claim"? If this inquiry be confined to the text of the act, we get no satisfactory answer, for the term is not there defined. General legal terminology will not help us, for neither is it therein defined. There is but one possible way of determining its meaning, within the legislative understanding, and that is by resorting to the earlier and repealed acts in pari materia in which the apportionment of claims is specifically allowed and provided for.

"When there are earlier acts relating to the same subject the survey must extend to them; for all are, for the purposes of construction, considered as forming one homogeneous consistent body of the common system to which it belongs."

Endlich on Inter. of Statutes, Section 43. How general this canon of construction prevails is evidenced by the authorities there cited.

"The interpretation of statutes in pari materia by each other" says C. J. GIBSON in The Mayor v. Davis, 6 W. & S. 269, "has been carried so far that it was said by LORD MANSFIELD in Rex v. Loxdale, 1 Burr 447 "that all which relate to the same subject, notwithstanding some of them may be expired, or not noticed, must be taken to be one system and construed consistently." But what is more to the purpose, it was ruled in The King Qui tam v. Smith, (4 T. R. 419), that when the same word is used in statutes which are in pari materia, a distinction as to the sense in which it is used in the one, is a legislative exposition of the sense in which it is to be understood in the other. And in Bacon's Abridgment, Title, Statute 1, it is said that "words and phrases whose sense in a statute, has been ascertained, are to be understood in the same sense when used in a subsequent statute. Even though statutes in pari materia have been expressly repealed yet the survey must extend to them as well."

"To discover the true meaning of a statute it is the duty of the court to consider other statutes made in pari materia whether they are repealed or unrepealed": Daniels v. Com., 7 Pa. 371.

The one particular statute to which reference must here be made is the Act of March 30, 1831, Section 4, P. L. 242. It is there provided—nothing short of a recital of the entire section will answer our purpose—that,

"Whereas, it sometimes happens that several houses and other buildings adjoining each other are erected by the same owner, so that it is impossible for the person who has found and provided material for the same, to specify in his claim filed the particular house or other building for which the several items of his demand were so found and provided; And whereas, doubts have arisen as to the true construction in such case, of laws of this Commonwealth: Therefore, it shall and may be lawful in every case for the person so finding and providing materials as aforesaid, for two or more adjoining

houses, and other buildings, built by the same person, owner of the same, and debtor for the said materials, to file with his claim thereof, an apportionment of the amount of the same, among the said houses and other buildings, and each of the said houses and other buildings shall be subject to the payment of its said apportioned share of the debt contracted in the same manner as is provided by law in other cases."

Here we have the origin of the "apportioned claim," and a clear expression of what was to be understood thereby. The act permitted the filing of a single claim against several adjoining buildings, and apportionment by the claimant of the whole sum claimed between the several buildings, so that they could severally be made answerable for the apportioned charge, each for its own fixed proportion, for the reason, that—

"it sometimes happens that the several houses and other buildings adjoining each other, are erected by the same owner, so that it is impossible for the person who has found and provided material for the same, to specify in his claim filed the particular house or other building for which the several items of his demand were so found and furnished."

This then is what was meant by an "apportioned claim"; the term had thus a fixed, definite meaning by legislative usage and sanction; "adjoining each other" necessarily entered into and became essential to its definition. We need not delay to cite authorities to show that as judicially interpreted the same meaning has always been given it. Applying then the canon of construction above referred to we have no difficulty in reaching the conclusion that as the term "apportioned claims" occurs in the Act of June 4, 1901, the reference is to such apportioned claims as were recognized and allowed by the Act of 1831. These were the apportioned claims that were forbidden thereafter; there were none other.

The argument in support of the contrary view rests solely on the fact that in Section 12, of the general Act

of 1901, the word "adjoining" does not occur. From this circumstance is derived the conclusion that it was the legislative purpose by the Act of 1901 to allow thereafter separate apportioned claims against separate buildings not adjoining. We attach no significance to the circumstance, for the reason that the Act of 1901, attempts no definition of the "apportioned claims" which it forbids, but simply disallows thereafter what for more than seventy-five years under legislative sanction and judicial interpretation had been understood as "apportioned claims." Had any such radical change in connection with our Mechanic's Lien laws as would necessarily result, were any contrary view to prevail, been contemplated, the legislature would hardly have left the fact to be derived solely by inference from a circumstance of no more certain import than that here relied upon; it is only reasonable to suppose that it would have indicated its purpose in this regard by positive and direct expression.

Our conclusion is that Section 3 of the Act of 1901 affords no warrant for the filing of "separate claim, with amount determined by apportionment," except in cases where the buildings are adjoining. It follows that the claim in this case being a separate apportioned claim, and the building sought to be charged with an apportioned amount not being adjoining with the other buildings embraced in the claim, it was filed without warrant of law. In this respect it was incurably defective; and because it was so, the learned court was entirely correct in refusing the amendment offered.

In the view we have taken of the case, the question of the constitutionality of the Act of 1901, is aside from the one and only issue, and does not call for discussion. For the reasons stated the judgment is affirmed.